# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN O'KEEFFE, as successor trustee of the O'Connell Family Trust, individually and as a class representative, | ) ) ) | CASE NO. 5:19-cv-0402 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFF, | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by defendant, Continental Casualty Company ("CNA").[1] (Doc. No. 13 ["Mot."].) Plaintiff Kathleen O'Keeffe ("O'Keeffe" or "plaintiff") filed a memorandum in opposition (Doc. No. 15 ["Opp'n"]) and CNA filed a reply (Doc. No. 16 ["Reply"]). For the reasons set forth herein, CNA's motion is granted.

## I.      STANDARD ON A MOTION TO DISMISS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 555, n.3 (criticizing the *Twombly* dissent's

---

[1] Because Continental Casualty Company is referred to in the relevant settlement agreement as "CNA," the Court will use the same reference herein.

assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts") (internal citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## II.    DISCUSSION

### A.    Background

Prior to her death in 2018, plaintiff's decedent, Vivian O'Connell ("O'Connell"), a North Dakota resident, was insured under a CNA long-term care policy, effective September 2, 1992. (Doc. No. 1, Complaint ["Compl."] ¶¶ 8, 15, 22; Mot. at 225.)[2] A copy of this policy is attached to the complaint as Exhibit B. (Doc. No. 1-2, Vivian O'Connell LTC Policy [the "Policy"].) CNA has allegedly sold "tens of thousands" of these, or similar, policies. (Compl. ¶ 1.) There are two types of benefit covered by the policies: the long-term care facility benefit (the "LTCF Benefit")

---

[2] Plaintiff O'Keeffe is the daughter of O'Connell and the successor trustee of the O'Connell Family Trust. (Compl. ¶ 16.)

and the "Alternate Plan of Care Benefit" (the "APC Benefit"). (*Id.* ¶ 2; Mot. at 225; Policy at 130–31.)

In 2007, a nationwide class of plaintiffs (which included O'Connell) sued CNA. *See Pavlov v. Cont'l Cas. Co.*, N.D. Ohio Case No. 5:07-cv-2580. The *Pavlov* litigation challenged CNA's practice of denying LTCF Benefit claims on the basis that the facility for which coverage was sought did not have a nurse **on-site** 24 hours a day, seven days a week. The plaintiffs in *Pavlov* argued that there was no **on-site** requirement in the policy.

In 2009, this Court approved a settlement agreement in *Pavlov*, a copy of which is attached as Exhibit A to the instant complaint. (Doc. No. 1-1 ["*Pavlov* Settlement"].) Under the terms of the *Pavlov* Settlement, as to Class II policyholders,[3] CNA agreed to abandon the 24/7 on-site requirement for the policies at issue and agreed to pay the full daily LTCF Benefit Amount as long as the facility had a qualified nurse on-site for at least five hours per day, seven days per week ("the 35-Hour Standard"). (Compl. ¶¶ 3, 37.) In circumstances where a facility did not satisfy the new 35-Hour Standard, CNA was required by the settlement to offer an APC Benefit equal to 25% of the greater of the daily LTCF Benefit under the policy or the daily cost of the facility, provided such benefit did not exceed the lesser of the daily LTCF Benefit or the daily cost of the facility. (*Id.* ¶ 3 (citing *Pavlov* Settlement at 44, Section V.B.2.ii.a); ¶¶ 4, 38.) Notably, the *Pavlov* Settlement also provided: "The claims handling changes discussed in this section [relating to the policy's Nursing Services Requirement] shall not affect any other term of the policy." (*Pavlov* Settlement at 45, Section V.B.4.)

---

[3] There were two classes agreed to in the *Pavlov* Settlement. O'Connell was a member of Settlement Class II (Compl. ¶ 68), which included "all persons who have an In-Force Policy" as listed in Exhibit F to the settlement agreement. (*See Pavlov* Settlement at 34–35 (all page number references herein are to the page identification number generated by the Court's electronic docketing system).)

On or about June 30, 2010, to be closer to her family, O'Connell moved from a facility where she had been receiving her full LTCF Benefit for approximately two (2) years to the Edgewood Vista facility in Bismarck, North Dakota. (*Id.* ¶ 42.) Because CNA determined that Edgewood Vista did not provide the required level of nursing coverage to qualify for the LTCF Benefit under the *Pavlov* Settlement, O'Connell was offered coverage under the APC Benefit, which she received for approximately four (4) years. (*Id.* ¶¶ 43–44.)

On or about September 16, 2014, CNA sent O'Connell a letter, stating in relevant part:

> This letter serves as notification that benefits under the above Long Term Care policy have reached the policy's Maximum Benefit Period of 2190 days. The Maximum Benefit Period ended on August 29, 2014.

(*Id.* ¶ 45.)

The instant putative class action complaint[4] alleges, in Count I, that CNA breached the *Pavlov* Settlement by prematurely terminating the APC Benefit coverage allegedly owed to O'Connell and to similarly situated policyholders. (*Id.* ¶¶ 14, 15, 71.) Count II raises a claim under an Illinois statute for recovery of reasonable attorney fees and other costs related to insurer bad faith. Count III asserts a common law claim of insurer bad faith.

## B.    Defendant's Motion to Dismiss

CNA argues that plaintiff's breach of contract claim fails because the Policy's Benefit Period limits benefit payments, in O'Connell's case, to no more than 6 years (2190 days) and the *Pavlov* Settlement had no effect on that Benefit Period. (Mot. at 228–29 (citing Section V.B.4 (the

---

[4] This case has been assigned to the undersigned because, under the *Pavlov* Settlement, "[c]laims of CNA's noncompliance with [any] terms shall be treated as breach of contract claims[,]" and "[a]ny action to enforce [the] Settlement Agreement shall be commenced and maintained only in the United States District Court for the Northern District of Ohio . . . under the authority of the same Court, and the Court shall retain jurisdiction for the purposes of enforcing the terms of [the] Settlement Agreement." (*Pavlov* Settlement at 45, 67.)

settlement agreement "shall not affect any other term of the policy")).) Further, CNA claims that there is no basis in either the *Pavlov* Settlement or the Policy for plaintiff's assertion that the Benefit Period is inapplicable to APC Benefits. (*Id.*) And, because plaintiff's remaining claims require proof of a breach of contract, CNA asserts that they must be dismissed. (*Id.* at 224.) CNA also argues that disputes under O'Connell's insurance policy are not subject to Illinois law, although disputes under the *Pavlov* Settlement are. (*Id.*)

### 1.     Count I - Breach of Contract

The gravamen of this count of the complaint is that "[b]y terminating [O'Connell's] and Class Members' 25% APC Benefit coverage before they exhausted their policies' 'maximum dollar benefit,' [CNA] failed to comply with and breached the terms of the Settlement Agreement." (Compl. ¶ 71.)

CNA argues that the *Pavlov* Settlement did not alter the Benefit Period in O'Connell's insurance policy; it merely modified CNA's interpretation of the nurse supervision requirement for making a facility eligible for coverage under the Policy. Plaintiff concedes that O'Connell chose a 6-year (2190 days) Benefit Period, noting that benefit periods generally range from two (2) years to unlimited. (Opp'n at 245, n.2; *see* Policy at 123.) But plaintiff argues that this Benefit Period, which is not mentioned in the *Pavlov* Settlement, explicitly applies only to the LTCF Benefit, not to the APC Benefit. (Opp'n at 247.) In plaintiff's view, it is the "maximum dollar benefit" that sets any cap for payment under the Policy, not the "Benefit Period."

The Policy[5] contains a "Policy Schedule" that provides "specific information about the product . . . selected[.]" (Policy at 123.) It states:

---

[5] Although the claim here is for breach of the *Pavlov* Settlement, not, strictly speaking, for breach of the insurance policy, it is necessary to read the two documents together to determine whether the former has been breached.

BENEFITS

Long-Term Care Daily Benefit Amount ------- $60.00
Elimination Period ------------------------------- 30 days
Benefit Period ------------------------------------ 2190 days (6 years)

(*Id.*) Section 1 of the Policy also contains several definitions, including:

| | |
|---|---|
| Eligible Confinement | Your confinement for Long-Term Care in a Long-Term Care Facility. |
| Long-Term Care | Care required and provided in a Long-Term Care Facility which is:<br>1. Medically Necessary; or<br>2. Due to the Inability to Perform Two or More Activities of Daily Living; or<br>3. Due to Cognitive Impairment. |
| Period of Care | A continuous period in which You receive Long-Term Care or services provided by a nurse or home health care agency or services provided under an Alternate Plan of Care for the same or related condition. . . . |
| Benefit Period | The length of time You are eligible to receive Long-Term Care benefits in a Period of Care as shown on the Policy Schedule page. |

(Policy at 126–29.) The Policy defines "Long-Term Care Facility" to include certain requirements, including the "24-hour-a-day nursing services" requirement that was subsequently addressed by the *Pavlov* Settlement. (*Id.* at 128.)

Section 2 of the Policy contains information about "Benefits." (*Id.* at 130–133.) Although there are other benefits provided, relevant to this discussion are the Long-Term Care Benefit and the Alternate Plan of Care Benefit, each described as follows:

LONG-TERM CARE BENEFIT

| | |
|---|---|
| What is the Long-Term Care Benefit and how does it work? | We will pay You the Long-Term Care Daily Benefit Amount, as scheduled in Your policy, for each day of Your |

Eligible Confinement during a Period of Care which:

1. occurs after the Elimination Period, and
2. occurs during the Benefit Period.

(Policy at 130.)

## ALTERNATE PLAN OF CARE BENEFIT

What is the Alternate Plan of Care Benefit and how does it work?

If You would otherwise require an Eligible Confinement, We may pay for services under a written Alternate Plan of Care, if such plan is a medically acceptable option. This Alternate Plan of Care:

1. must be agreed to by You, Your physician, and Us;
2. can be initiated by You or Us; and
3. will be developed by or with health care professionals.

Any plan, including the benefit levels to be payable, which is mutually agreeable to You, Your physician and Us will be adopted.

Your agreement to participate in an Alternate Plan of Care will not waive any of Your or Our rights under the policy.

The maximum dollar benefit, if any, otherwise payable due to the same or related causes within a Period of Care, will apply to the total of all benefits payable under the Long-Term Care Benefit and the Alternate Plan of Care Benefit.

(*Id.* at 131.) The *Pavlov* Settlement defines Long Term Care Facility Benefit as "the benefit payable for stays at a Long Term Care Facility under a Policy" and it defines the APC Benefit as "the benefit so-described in the Policies." (*Pavlov* Settlement at 32, 26.)

Plaintiff takes the position that the "maximum dollar benefit" referred to in the description of the APC Benefit in the Policy is the $60 per day LTCF Benefit multiplied by the 2190 days in the Benefit Period. She claims she and the putative class members are entitled to "the greater of 25% of the daily cost of the facility or 25% of the LTCF Daily Benefit Amount for every day the insured otherwise qualifies for coverage under the LTCF Benefit but stays at [a] facility that does not provide the requisite amount of on-site licensed nursing supervision to satisfy the 35-Hour Standard — *until the maximum dollar benefit is reached*." (Opp'n at 257–58 (emphasis in original).) Plaintiff, in fact, argues that this is required by the *Pavlov* Settlement. Plaintiff claims that CNA's position credits the Benefit Period, but ignores the maximum dollar benefit. (Opp'n at 259–60.) Defendant criticizes this position, asserting that "[i]n essence, [plaintiff] argues that she deserves the full LTCF Benefit — the same amount of money she would have received if she lived in a qualifying facility for the full Benefit Period — just is smaller increments." (Mot. at 229.)

CNA has the correct position. The Policy has two basic limiting elements *and* an overall cap that must all be construed in concert with each other and with the *Pavlov* Settlement. The two limiting elements in the Policy consist of the *amount* that will be paid and the *period of time* during which that amount will be paid.[6] The amount is (alone or in combination) *either* the full LTCF Benefit or the APC Benefit (depending on the nature of a particular facility and whether it meets

---

[6] Plaintiff's assertion that the Benefit Period only limits the LTCF Benefit and not the APC Benefit ignores the fact that the latter is an *alternative* to the former, both being provided by the Policy and, therefore, both being limited by the Benefit Period selected. *See also* n.7, *infra*.

certain requirements) *or* the accommodation APC Benefit set forth in the *Pavlov* Settlement. No matter which of these benefit *amounts* is paid, and no matter in what combination, the payments will only continue during the *period of time* defined as the Benefit Period, in this case, six (6) years or 2190 days. But, the "maximum dollar benefit" caps all benefits to $131,400 — meaning that, within the 6-year (2190-day) Benefit Period, any combination of benefit amounts paid cannot *exceed* $131,400.[7] It does not mean, as plaintiff argues, that payments must continue, even beyond the Benefit Period, until they equal the maximum dollar benefit.

Plaintiff's complaint does not state a claim for relief on breach of contract because, taking all the facts as true, and considering them in light of the Policy (which is the Court's to construe), CNA breached neither the *Pavlov* Settlement nor O'Connell's Policy when it terminated payment of benefits after the 2190 days (or 6 years) had expired.

CNA is entitled to dismissal of Count I of the complaint.

## 2. Counts II and III

Count III alleges a common law claim of bad faith and Count II seeks attorney's fees under an Illinois statute[8] whose purpose is to authorize awards of such fees to policyholders who prevail on bad faith claims against their insurer. Both claims require an underlying breach of contract —

---

[7] Defendant asserts that a policy would be unenforceable as too vague if it did not include a specific number of days during which the policyholder is eligible for benefits. Plaintiff criticizes this argument, asserting that, if it were true, then policies with "lifetime" benefit periods would lack specificity and, therefore, would be universally unenforceable. Although "lifetime" is not measured in a particular number of days, it is not indefinite because one can certainly ascertain when the benefit comes to an end — that is, when the policyholder's life ends. Premiums paid by the policyholder no doubt take into account the potential period of coverage — as short as two years; in the medium range of six years (as here); or the potentially (though not necessarily) longer lifetime range.

[8] The parties disagree as to whether Illinois law or North Dakota law should govern. The *Pavlov* Settlement expressly applies Illinois law. (*Pavlov* Settlement at 67.) Since plaintiff's claim is for breach of this settlement agreement, the Court concludes that Illinois law applies, even though that agreement must be read in conjunction with the Policy, which would likely be governed by North Dakota law. Since there is no underlying breach of contract to support either Count II or Count III, the Court need not spend time wrestling with a conflict of law question.

here, a breach of the *Pavlov* Settlement when read in conjunction with the Policy. *See, e.g.*, *Martin v. Ill. Farmers Ins.*, 742 N.E.2d 848, 857–58 (Ill. Ct. App. 2000) ("a defendant cannot be liable [under the Illinois statute] where no benefits are owed"). Plaintiff has failed to establish any such breach and, therefore, CNA is entitled to dismissal of these two claims.

## III.    CONCLUSION

For the reasons set forth herein, defendant Continental Casualty Company's motion to dismiss (Doc. No. 13) is granted. This case is closed.

**IT IS SO ORDERED**.

Dated: December 16, 2019

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**